UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHARLES K.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02013-JPH-DML |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] In March 2018, the U.S. Government Accountability Office (GAO) informed the President of its determination that Nancy Berryhill had exceeded the time limit under the Federal Vacancies Reform Act of 1998 (FVRA) allowing her to serve as the Acting Commissioner of the Social Security Administration without the nomination of a successor. *Patterson v. Berryhill,* No. 2:18-cv-193, (W.D. Pa. June 14, 2018) https://www.leagle.com/decision/infdco20180615f26 (last visited Jan. 23, 2019). Accordingly, Ms. Berryhill stepped down as Acting Commissioner and continued to lead the agency from her Deputy Commissioner for Operations title of record. *Id.* However, she has resumed her role as Acting Commissioner after the President's nomination of a potential successor. *Id.*; *see* 5 U.S.C. § 3346(a)(2) (providing that, once a first or second nomination for the office is submitted to the Senate, an acting officer may serve from the date of such nomination for the period the nomination is pending in the Senate); *see also* Daily Digest of the Senate, https://www.govinfo.gov/content/pkg/CREC-2019-01-16/pdf/CREC-2019-01-16-dailydigest.pdf (last visited Jan. 23, 2019) (showing the re-nomination of Andrew Saul on January 16, 2019 as the Commissioner of Social Security). The case caption has been updated to reflect Ms. Berryhill's current official title.

Plaintiff Charles K. (the "Plaintiff") seeks judicial review of the Social Security Administration's decision denying his petition for certain benefits. For the reasons that follow, the decision is AFFIRMED.

The Plaintiff applied for supplemental security income ("SSI") from the Social Security Administration ("SSA") on March 10, 2015, alleging an onset date of September 13, 2011. [Dkt. 8-2 at 20.] His application was initially denied on May 27, 2015, [Dkt. 8-5 at 6], and again upon reconsideration on August 10, 2015, [Dkt. 8-5 at 18]. Administrative Law Judge David Welch (the "ALJ") conducted a hearing on May 3, 2017. [Dkt. 8-2 at 38–78.] The day of the hearing, the Plaintiff moved to amend his alleged onset date to March 20, 2015. [Dkt. 8-6 at 26.] The ALJ issued a decision on July 28, 2017, concluding that the Plaintiff was not entitled to receive SSI. [Dkt. 8-2 at 17.] The Appeals Council denied review on May 7, 2018. [Dkt. 8-2 at 2.] On July 2, 2018, the Plaintiff timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Dkt. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton,* 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected

to last … not less than 12 months." *Id.* at 217. "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue,* 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford,* 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett,* 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

The Plaintiff was 37 years of age at the time he applied for SSI. [Dkt. 8-6 at 2.] He has completed the ninth grade and did not attain the level of education necessary to get a GED. [Dkt. 8-2 at 43.] He has not had a regular job but has admitted to drug dealing. [Dkt. 8-2 at 24.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that the Plaintiff was not disabled. [Dkt. 8-2 at 31.] Specifically, the ALJ found as follows:

- At Step One, the Plaintiff had not engaged in substantial gainful activity[4] since March 20, 2015, the amended onset date. [Dkt. 8-2 at 22.]

- At Step Two, he had the following severe impairments: diabetes mellitus, degenerative disc disease of the lumbar spine, gastroesophageal reflux disease, degenerative joint disease of the shoulders, osteoarthritis of the right index finger, morbid obesity, and anxiety. [Dkt. 8-2 at 23.]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Dkt. 8-2 at 23.]

- After Step Three but before Step Four, he had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except: the claimant is capable of sitting up to two (2) hours at a time and up to six (6) hours in an eight (8) hour workday. The claimant is capable of standing and/or walking up to one (1) hour at a time and two (2) hours total in an eight (8) hour workday, provided the claimant is allowed to alternate between sitting and standing at will. The claimant is capable of frequent handling

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

and fine manipulation. The claimant is capable of occasional overhead reaching, balancing, stooping and climbing ramps and stairs, but no kneeling, crouching, crawling or climbing of ladders, ropes and scaffolds. The claimant should avoid all exposure to extreme heat, cold, humidity and unprotected heights. Finally, the claimant is limited to simple, routine and repetitive tasks requiring simple work-related decisions, in a work environment with no production rate or pace work, requiring no more that [sic] occasional interaction with the public, coworkers and supervisors." [Dkt. 8-2 at 25.]

- At Step Four, there was no past relevant work to evaluate. [Dkt. 8-2 at 29.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering the Plaintiff's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision. [Dkt. 8-2 at 30.]

### III.
#### DISCUSSION

The Plaintiff contends the ALJ erred when he: (1) failed to consider a previous decision regarding a previous claim covering a different period of time; (2) did not explain why he chose the less restrictive, relevant limitation in his RFC finding; and (3) failed to verify with the vocational expert that his testimony was consistent with the Dictionary of Occupational Titles. The Court addresses each argument in turn.

#### A. Prior SSA Decision Awarding SSI

The Plaintiff argues the ALJ was required to consider a previous fully favorable decision of another ALJ on a prior claim for SSI that was decided on April 18, 2013 ("the April 2013 Decision"). [Dkt. 10 at 19 (citing Dkt. 10-1 at 1).] The Plaintiff contends that because the benefits awarded by the April 2013 Decision were terminated due to incarceration—rather than a finding of medical

improvement—and the instant claim includes all of the same impairments as the prior claim (with a worsening back impairment), the ALJ was required to explain how the Plaintiff's "conditions have changed to the point of no longer being eligible for benefits." [Dkt. 10 at 19.] Contrary to the Plaintiff's arguments, the ALJ did not have a duty to address the prior favorable decision.

First, the April 2013 Decision was not a part of the administrative record before the ALJ in this case. Although the Plaintiff alluded to the April 2013 Decision once during his testimony—"when I got disability the last time," [dkt. 8-2 at 56]—the Plaintiff's representative did not make any argument at the hearing about its significance. Furthermore, the briefs do not shed any light on why the April 2013 Decision is not in the record or the possible significance of the omission.

Second, SSA policy provides for *de novo* review of a claim involving a period of time that has not been adjudicated. The instant claim involves a period of time that was not covered by the April 2013 Decision. The Social Security Administration has given clear guidance regarding how a prior SSA decision may impact a later decision:

> Under SSA policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims. However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period,

7

SSA considers the facts and issues *de novo* in determining disability with respect to the unadjudicated period.

*Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act.* AR 98-4(6) (S.S.A. June 1, 1998), 1998 WL 283902, at *2 (emphasis added).

Finally, the Seventh Circuit recently explained it was not aware of any authority "that requires an ALJ to use the same RFC that a different ALJ used in denying the benefits for a prior period." *Penrod on behalf of Penrod v. Berryhill,* 900 F.3d 474, 477 (7th Cir. 2018).

The Plaintiff cites a Social Security Ruling ("SSR") for the proposition that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." *See* [Dkt. 10 at 20]; SSR 06-3p (S.S.A. Aug. 9, 2006), 2006 WL 2329939, at *6.[5] The SSA's Acquiescence Ruling and recent Seventh Circuit case cited *supra*, however, are more on-point here than the SSR cited by the Plaintiff.

The Court concludes that the ALJ did not err in giving *de novo* consideration to the new period of adjudication based on the medical evidence of record beginning with the Plaintiff's application for benefits in the instant claim. The Court will not remand the claim to consider the prior decision.

---

[5] SSR 06-3p has been rescinded by the Commissioner, but only for claims filed after March 27, 2017. *Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p* (S.S.A. Mar. 27, 2017), 2017 WL 3928298, at *1.

**B. Fine Manipulation**

The Plaintiff next argues that the ALJ erred when he did not explain why he chose the less restrictive, relevant limitation in his RFC finding. The ALJ presented multiple hypothetical questions to the VE, which included differing limitations with respect to the Plaintiff's ability to use his right dominant hand for fingering or fine manipulation. The ALJ elected to use a less restrictive, relevant limitation in his RFC finding. [Dkt. 10 at 21.]

The ALJ's first hypothetical included a limitation to "[o]ccasionally engaging in all of the postural limitations with the right upper extremity which is the dominant upper extremity. Only occasionally engaging in fingering, that is fine manipulation." [Dkt. 8-2 at 69.] As noted above, the ALJ's RFC finding limited the Plaintiff to frequent fine manipulation, bilaterally, rather than occasional fine manipulation with the right hand.

The ALJ did not ignore the supportive relevant evidence. The ALJ found that the Plaintiff's osteoarthritis in his right index finger was a severe impairment. The ALJ described a consultative examination performed May 18, 2015, which he concluded did not "suggest a disabling condition," but he did acknowledge the "only remarkable clinical finding[s were] a slightly reduced abduction of the shoulders and lack of active flex in the right index finger (Ex. B7F)." [Dkt. 8-2 at 28.]

The ALJ also provided a sufficient explanation as to how he arrived at his RFC determination based on the opinions of the medical experts that testified during the hearing:

The medical opinions of the medical experts, Dr. Lee A Fischer, M.D. and Dr. Don A. Olive, Ph.D., are given great weight (Ex. B13F-BI4F). They have applicable medical specialties: Dr. Fischer is Board Certified in Family Medicine; and Dr. Olive, Clinical Psychologist, specializes in Forensic Psychology and Neuropsychology. They share a specialized knowledge of the Social Security disability program and lengthy experience serving as independent, objective, neutral and impartial medical experts evaluating Social Security disability cases. They each personally reviewed the entire medical record including the most up to date medical exhibits. Both offered a thorough analysis of the medical evidence pertinent to their medical expertise. Each medical expert offered an insightful and persuasive explanation in support of their respective medical opinion. Lastly, their medical opinions are consistent with the record as a whole.

[Dkt. 8-2 at 28–29.] Dr. Fischer testified consistent with the ALJ's RFC, in relevant part, that he believed that the Plaintiff was limited to "overhead lift, overhead reaching occasionally, but then doing all other manipulative activities frequently with both hands."[6] [Dkt. 8-2 at 46.] The Plaintiff's representative specifically cross-examined Dr. Fischer about the issue. "And you mentioned the right index finger. Would that limit his ability to do any fine fingering on his right hand?" [Dkt. 8-2 at 49.] Dr. Fischer responded:

Slightly maybe with that finger but at the consultative exam, he was able to grasp and do buttoning and use the – both hands without problems. And – and again I made his – I took that into consideration saying instead of continuously he could do those activities frequently as opposed to continuously.

---

[6] The ALJ posed a second hypothetical to the VE that was based on the collective opinions of the medical experts, including Dr. Fischer, which did return other work that would be applicable in the context of those limitations. [Dkt. 8-2 at 70–71.] The Plaintiff's representative established that any further reduction of his ability to perform fingering or fine manipulation to only occasionally—in combination with the ALJ's second hypothetical—would eliminate all other work that was available in viable numbers in the economy. [Dkt. 8-2 at 73–76.]

[Dkt. 8-2 at 49; *see* Dkt. 8-12 at 94 ("Claimant is able to fully close all fingers into a fist, and button clothing utilizing both hands. Finger abduction is 5/5 bilaterally. The claimant is able to write with the dominant hand.").]

Furthermore, the opinions of the reviewing consultants are not inconsistent with the ALJ's RFC finding. Both consultants found that fingering (or fine manipulation) would be limited on the right hand but did not specify the precise degree of limitation (i.e., continuous, frequent, or occasional). [Dkt. 8-4 at 9; Dkt. 8-4 at 22.] Regardless, the ALJ explained that their opinions were "assigned partial weight," rather than the great weight given to the medical experts' opinions, including Dr. Fischer. [Dkt. 8-2 at 29.]

The ALJ confronted the conflicting evidence and provided a sufficient explanation as to how he arrived at his relevant, material conclusions concerning the Plaintiff's use of his right hand for fine manipulation. The authorities cited by the Plaintiff in support of his position are factually distinguishable, not controlling and do not support a different outcome.

C. **Dictionary of Occupational Titles**

The Plaintiff last argues that the ALJ erred when he failed to verify with the VE that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). [Dkt. 10 at 25.] While the Court concludes that the ALJ erred in his handling of this issue, it was harmless error that does not warrant remand.

The ALJ did not remind the VE before testifying that he must identify any conflicts between his testimony and the information contained in the DOT. The ALJ also failed to inquire about any conflict at any point during or after the VE's

testimony.  "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."  Social Security Ruling ("SSR") 00-4p (S.S.A. Dec. 4, 2000), 2000 WL 1898704 at *4.  The Seventh Circuit has held that SSR 00-4p's "language unambiguously sets out the ALJ's affirmative duty," to inquire about any potential conflicts with the DOT and that claimant is "not required to raise the issue at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ."  Prochaska, 454 F.3d at 735. The ALJ's failure was error.

An ALJ's failure to comply with the duty imposed by SSR 00-4p is harmless error "unless there actually was a conflict."  Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009).  The Plaintiff has not developed his argument by pointing to any actual conflict with the DOT, see [Dkt. 10 at 25–26], and the Plaintiff did not respond to the Commissioner's argument that the error was harmless, [Dkt. 15 at 9].  The Plaintiff's "argument is 'perfunctory and undeveloped,' and therefore waived."  Hall v. Berryhill, 906 F.3d 640, 644 (7th Cir. 2018), reh'g denied (Dec. 18, 2018) (quoting Crespo v. Colvin, 824 F.3d 667, 674 (7th Cir. 2016)).

Even if the Plaintiff had not waived the argument, there is no conflict between the other work that the ALJ found the Plaintiff capable of performing based on the VE's testimony and the limitations that the ALJ included in his RFC finding.  See [Dkt. 8-2 at 30 (listing the other jobs used at Step Five).] According to the DOT, each of the job titles are performed at the sedentary

exertional level and require frequent handling and fingering without the presence of any postural, mental, or environmental requirements that are not compatible with the ALJ's RFC finding. *See* DICOT 739.687-182 (G.P.O.), 1991 WL 680217 (Table Worker); DICOT 209.587-010 (G.P.O.), 1991 WL 671797 (Addresser); DICOT 685.687-014 (G.P.O.), 1991 WL 678284 (Cuff Folder). Accordingly, the ALJ's error was harmless.

## IV.
### CONCLUSION

The Court concludes that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. As there is no legal basis to reverse the ALJ's decision that the Plaintiff was not disabled during the relevant time period, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

**SO ORDERED.**

Date: 2/15/2019

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Charles D. Hankey
charleshankey@hankeylawoffice.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov